**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

John L. Metcalf,

        Plaintiff,

v.

The City of Minneapolis (Minneapolis Convention Center - "MCC"); Jeff Johnson individually and in his capacity as Assistant City Coordinator and Executive Director of the MCC; Lane Carlson, individually and in his capacity as Facilities Operations Manager; G. Jack Barr, individually and in his capacity as Event Operations Manager and/or Production Services Sr. Supervisor; Kurt Hicok, individually and in his capacity as Production Services Sr. Supervisor; Carrie Van DeVoort, individually and in her capacity as Shift Supervisor; Gregory Langford, individually and in his capacity as Event Operations Sr. Supervisor; John Zasada, individually and in his capacity as Shift Supervisor; Don Perry, individually and in his capacity as Shift Supervisor; Don Moody, individually and in his capacity as Shift Supervisor; Asrat Tesfa, individually and in his capacity as Shift Supervisor; Randy Rasmussen, individually and in his capacity as Facilities Services Senior supervisor; Gregory Hintz, individually and in his capacity as Shift Supervisor; and Kelber Catering, Inc.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**
Civil No. 11-3023 ADM/LIB

---

Christopher R. Walsh, Esq., Walsh Law Firm, Minneapolis, MN, on behalf of Plaintiff.

Darla J. Boggs, Esq., Gregory P. Sautter, Esq., and James Anthony Moore, Esq., City Attorney's

Office, Minneapolis, MN, on behalf of all City Defendants.[1]

## I. INTRODUCTION

On May 24, 2012, the undersigned United States District Judge heard oral argument on the City Defendants' Motion to Dismiss the Complaint [Docket No. 8] ("Motion to Dismiss"). For the reasons set forth below, the City Defendants' Motion to Dismiss is granted.

## II. BACKGROUND

Plaintiff John Metcalf ("Metcalf") is an African-American male, aged 63, and has been an employee of the City of Minneapolis at the Minneapolis Convention Center ("MCC") since January 29, 1998. Compl. [Docket No. 1] ¶ 13. Metcalf first filed a complaint of race discrimination and retaliation with the Minnesota Department of Civil Rights ("MDCR") on October 21, 2008, which was dual-filed with the United States Equal Employment Opportunity Commission ("EEOC"). Compl. ¶ 95; Boggs Aff. [Docket No. 11] Ex. A (MDCR No. 08-33168). Another complaint of discrimination and retaliation, this time based on disability and age, was made by Metcalf to both the MDCR and the EEOC on March 23, 2011. Compl. ¶ 97; Boggs Aff. Ex. B ("MDCR No. 11-6816"). No probable cause was found in either complaint. Boggs Aff. Exs. C–F. Metcalf received "right-to-sue" notification for his first complaint from the MDCR on June 1, 2011, and from the EEOC on July 12, 2011. Boggs Aff. Exs. C, E. Metcalf received "right-to-sue" notification for his second complaint from the MDCR on August 26, 2011, and from the EEOC on October 14, 2011. Boggs. Aff. Exs. D, F.

On October 14, 2011, Metcalf filed his sixty-eight-page Complaint in this suit, alleging

---

[1] The "City Defendants" include all Defendants except Kelber Catering, Inc. Kelber Catering, Inc. has not filed an appearance in this litigation.

various discrimination claims under 42. U.S.C. §§ 1981, 1983, 2000, and 12101, 29 U.S.C. § 626, the Minnesota Human Rights Act ("MHRA"), the Minnesota Dismissal for Age Act ("MDAA"), and Minneapolis Civil Rights Ordinance ("MCRO") §139.40.  In his Complaint, Metcalf mentions other plaintiffs who experienced discrimination and who are presently in litigation against many of the same defendants and are represented by the same counsel.  See, e.g., Compl. ¶ 20 ("[T]he City of Minneapolis favors [Defendants] and does not retaliate against them like it does Plaintiff and other protected class members, such as the Benford Group I Plaintiffs.").  Benford v. The City of Minneapolis, Civ. No. 10-4539 (ADM/LIB), was filed on November 11, 2010.

Metcalf failed to serve process on any party in this matter prior to the 120-day deadline, February 11, 2012, and he did not serve this lawsuit on Defendant City of Minneapolis until February 15, 2012.  On March 6, 2012, the City Defendants filed their Motion to Dismiss.  Defendants Asrat Tesfa, Don Moody,[2] and Carrie Van DeVoort were served at a deposition in another matter on April 20, 2012, and Defendants Gregory Hintz and Randy Rasmussen were served with the Complaint at a deposition in another matter on April 26, 2012.  See Docket Nos. 17, 19–22.  John Zasada was served on April 24, 2012.  Docket No. 23.  On May 2, 2012, Metcalf finally served Defendants G. Jack Barr, Lane Carlson, Kurt Hicok, and Don Perry.  See Docket Nos. 13–16, 18.  Defendant Jeff Johnson was purportedly served with the Complaint at a deposition in another matter on May 8, 2012, but no Summons has been filed with the Court.

---

[2]The service of process to Don Moody is contested, as Don Moody alleges that Metcalf's counsel, Christopher Walsh, showed him Metcalf documents but did not serve him with a copy of the Complaint.  See Moore Aff. [Docket No. 32] ¶¶ 4–6.  For purposes of this Motion, it is unnecessary for the Court to determine whether Don Moody was effectively served on April 20, 2012, as Metcalf urges, or May 2, 2012, as City Defendants contend.

See City Defs.' Reply Mem. in Supp. of Mot. to Dismiss [Docket No. 31] 3.  No record has been offered showing that Metcalf has effectively served Defendant Kelber Catering, Inc. ("Kelber Catering").

### III.  DISCUSSION

#### A. Standard of Review

A motion to dismiss for insufficient service of process is governed by Rule 12 of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 12(b)(5).  On a motion to dismiss, the court views the pleadings in the light most favorable to the nonmoving party and treats the alleged facts in the complaint as true.  Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993).  Conclusions of law made by the nonmoving party, however, are not "blindly accept[ed]." Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).

Rule 4 of the Federal Rules of Civil Procedures establishes the framework for service of process, including the time limit for service.  Fed. R. Civ. P. 4(m).  If a defendant has not been served within 120 days, the court must dismiss the action without prejudice or order that service be made within a specified time.  Id.  The court must extend the time for service when the plaintiff shows good cause for the failure of process.  Id.  When a defendant has not been properly served, a federal court lacks jurisdiction over the defendant.  See Printed Media Svcs., Inc. v. Solna Web, Inc., 11 F.3d 838, 843 (8th Cir. 1993); see also Miss. Pub. Corp. v. Murphee, 326 U.S. 438, 444–45 (1946) ("[S]ervice of summons is the procedure by which a court . . . asserts jurisdiction over the person of the party served.").  "In the absence of service of process [or waiver], a court ordinarily may not exercise power over a party the complaint names as defendant."  Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999).

A court determining the timeliness of service of process follows a two-step analysis.

First, the court must inquire whether the plaintiff has demonstrated good cause for its failure to timely serve process – if so, the extension is mandatory. Colasante v. Wells Fargo Corp., 81 F. App'x. 611, 612–13 (8th Cir. 2003). If good cause is absent, the district court may grant a discretionary extension of the time of service when a plaintiff demonstrates excusable neglect. Id. at 613.

### B. Good Cause and Excusable Neglect

Metcalf does not dispute that he failed to serve Defendants process within the 120-day period. Metcalf also does not argue that he had good cause for failing to timely serve process on Defendants. Instead, Metcalf solely contends that the Motion to Dismiss should be denied because of excusable neglect.

The facts leave no room for Plaintiff to argue that good cause has been shown. A good cause determination hinges on the facts of each individual case and falls squarely within the discretion of the court. Kurka v. Iowa Cnty, Iowa, 628 F.3d 953, 957 (8th Cir. 2010). The plaintiff bears the burden of showing good cause. See, e.g., Dederick & Himlies, P.A. v. DuFour, 153 B.R. 853, 856 (D. Minn. 1993). Good cause is likely to be found when (1) a third person, typically the process server, is responsible, (2) the defendant has evaded service of process or engaged in misleading conduct, (3) the plaintiff has acted diligently and understandable mitigating circumstances are present, or (4) the plaintiff is pro se or in forma pauperis. Kurka, 628 F.3d at 957 (citing 4B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1137 (3d ed. 2002). None of these exist here.

On the other hand, excusable neglect is an "elastic concept" which affords courts the power to grant relief when a party has failed to meet a deadline due to inadvertence, mistake, carelessness, or by intervening circumstances beyond the party's control. Kurka, 628 F.3d at

959 (quoting <u>Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship</u>, 507 U.S. 380, 392 (1993)). A determination of excusable neglect is essentially equitable, accounting for all relevant circumstances surrounding the party's failure. <u>Kurka</u>, 628 F.3d at 959. "Relief [under excusable neglect] may be justified . . . if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service." Fed. R. Civ. P. 4, Advisory Committee Note to the 1993 Amendments, subd. (m). Additionally, four factors are used in determining excusable neglect: (1) possibility of prejudice to defendant; (2) length of delay and potential impact on judicial proceedings; (3) the reason for delay, including whether it was within the party's reasonable control; and (4) whether the party acted in good faith. <u>Kurka</u>, 628 F.3d at 959 (citations omitted). The key factor is the reason for delay. <u>Id.</u>

### 1. Reason for Delay

Metcalf's counsel's failure to timely serve process demonstrates neglect, but it is totally without excuse. The reason for delay rests solely on Metcalf's counsel. Although Metcalf's counsel states he was seeking to serve process within the 120-day deadline period, no evidence of any type was offered to this effect. Rather, the evidence shows that Metcalf's counsel made no attempts to serve the parties and was only reminded to do so at a meeting on February 14, 2012, in the <u>Benford</u> case, a lawsuit involving the same attorneys and many of the same defendants. Sautter Aff. [Docket No. 12] ¶¶ 6–8. Metcalf's counsel also contends that the delay was outside his reasonable control, because the City Defendants were evasive.

To rationalize his failure to timely serve process, Metcalf's counsel asserts that it was "unclear to me if [<u>Benford</u> and Metcalf's case] had been merged," citing to the reassignment of

his case to Judge Montgomery on October 26, 2011.[3]  See Feb. 14, 2012 Letter [Docket No. 3]. The Reassignment Order [Docket No. 2], however, unambiguously states that Metcalf's case is to "be assigned to Judge Ann D. Montgomery," not joined or merged with the related Benford case.  Id.  Additionally, Metcalf's counsel defends his conduct by stating that he assumed the 120-day deadline started from the date of reassignment, October 26, 2011, which would mean the deadline for service of process was February 24, 2012.  See Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss [Docket No. 24] ("Pl.'s Mem. In Opp'n") 10.  The Federal Rules of Civil Procedure are unequivocal on this point — "If a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action . . . ." Fed. R. Civ. P. 4(m) (emphasis added).  Additionally, nothing in the record suggests that Metcalf's counsel was attempting to serve Defendants at any time prior to February 14, 2012, Sautter Aff.  ¶¶ 6–8, and Metcalf's counsel has provided no rationale as to why he would have waited until ten days before what he believed to be the Rule 4(m) deadline to begin attempts to serve process.  See Wilkinson v. U.S. Postal Serv., Civ. No. 07-4312, 2008 WL 4833090, at *3 (D. Minn. Nov. 4, 2008) ("Where a plaintiff waits until the eve of the deadline to commence service of process, fails to provide a legitimate reason for the delay, and service is ultimately untimely, it is not an abuse of discretion for a court to dismiss without prejudice for insufficient service.") (citation omitted).

      The mistakes that Metcalf's counsel asserts he made are not the sort of mistakes which have been found to be excusable neglect.  Compare Davis v. Trans Union, LLC, 526 F. Supp. 2d 577, 584 (W.D. N.C. 2007) (finding excusable neglect because the delay resulted from the

---

[3]Metcalf's counsel has been litigating employment law claims in federal court for over twenty years.  See Walsh Law Firm, www.walshlawfirm.com, (last visited June 20, 2012).

difficulty of locating defendants rather than oversight or neglect by plaintiff); Golf Sav. Bank v. Walsh, Civ. No. 09-973, 2010 WL 3222112, at *5 (D. Or. Aug. 13, 2010) (finding neglect excusable where plaintiff declined to serve defendant at office out of professional courtesy, failed to find an alternative means of service, and where numerous failed service attempts were documented); German Free State of Bavaria v. Toyobo Co., Ltd., No. 1:06-CV-407, 2007 WL 1595030, at *1 (W.D. Mich. June 1, 2007) (finding excusable neglect where plaintiff mistakenly believed his service was proper when he left complaint in door of defendant's house while defendant's wife was present); with Pioneer Inv. Svcs. Co., 507 U.S. at 391 ("[I]nadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect . . . ."); Johnson v. N.Y. City Bd. of Educ., 23 Fed. Appx. 70, 2001 WL 1586692, at *2 (2d Cir. 2001) (affirming Rule 12(b)(5) dismissal for absence of excusable neglect where plaintiff attempted twice to serve process by mail but received no acknowledgments from defendants); Colasante v. Wells Fargo Corp., Inc., 211 F.R.D. 555, 561 (S.D. Iowa 2002) (finding no excusable neglect due to communication problems encountered after Plaintiff moved from Iowa to California because "[t]he Plaintiff had, but did not exercise, the control"); Gill v. Waikiki Lanai, Inc., Civ. No. 10-557, 2011 WL 3648772 (D. Haw. Aug. 18, 2011) (determining no excusable neglect when plaintiff mistakenly omitted a page from a complaint served 120 days after its filing); Michael v. Banks, No. Civ. 95-2592, 1996 WL 3902 (E.D. La. Jan. 3, 1996) (dismissing complaint for lack of good cause or excusable neglect where plaintiff mailed a copy of complaint to defendants but failed to perfect service after receiving no acknowledgment from defendants).  The key factor — the only reason for delay — was Metcalf's counsel's failure to attempt to serve process on any of the defendants within the time clearly set forth in the Federal Rules of Civil Procedure.  The mistakes, carelessness, or inadvertence that Metcalf's counsel

invokes as excusable neglect are without excuse, and do not warrant this court's discretionary extension of time to properly serve process.

### 2. Possibility of Prejudice to Defendants

The possibility of prejudice to the City Defendants is not a persuasive element here, given that they were already on actual notice of the nearly identical Benford claims. However, Metcalf's Complaint included an additional party (which remains unserved to this date).

Furthermore, the lack of prejudice to a defendant alone is insufficient to constitute excusable neglect. Colasante, 81 F. App'x. at 613 . Although the prejudice may not be particularly significant to the City Defendants, it is significant to the party which is newly added and still not served. Potential prejudice, therefore, weighs in favor of dismissing the claims.

### 3. Length of Delay and Potential Impact

The delay length and the potential impact on the judicial proceedings also warrant this court's dismissal of Metcalf's claims. While Metcalf served the City of Minneapolis within a few days after the 120-day deadline, he offered scant explanation and no documentary support as to why he failed to serve the remaining twelve defendants for well over two months after the Rule 4(m) deadline. Metcalf's counsel attempts several explanations for his failure to timely serve the City Defendants or to serve them soon after serving the City of Minneapolis. Metcalf's counsel contends that "the large quantity of Defendants," the City's "withholding of Rule 26 information necessary to complete the task," the "City's role in absenting the individual defendants," and the "City Attorney's repeated refusal to accept, acknowledge or waive service of process for its 13 Metcalf clients," all prevented him from timely serving all the defendants. Pl.'s Mem. in Opp'n 22.

All of these excuses fall short. Metcalf cannot now be heard to bemoan the multitude of

defendants that he deliberately chose to sue in his Complaint.[4]  On the day Metcalf filed his Complaint he knew that he would have to effect service of process on thirteen defendants, thereby incurring the costs and time necessary to bring a federal lawsuit against each of them. As for the City's withholding of Rule 26 information, Metcalf utterly fails to explain how defendants who have not been served with a complaint are required to make disclosures pursuant to that complaint.  The City's refusal to waive or accept service of process could only have happened after the February 14, 2012 meeting, several days after the 120-day deadline had already passed.  Moreover, a party's refusal to waive service of process does not excuse the opposing party's failure to serve.  See, e.g., Fid. & Deposit Co. of Md. v. Ramco Indus., Inc., No. 95 C 7015, 1996 WL 392164, at *2 (N.D. Ill. July 11, 1996).

Finally, Metcalf's counsel alleges that the City of Minneapolis spirited away many of the individual defendants in this case to evade service of process, but the uncontroverted record belies that contention.  First, the day before Metcalf filed his Complaint the MCC sent him a letter describing the upcoming reorganization which eliminated some of the individual defendants' positions.  See Walsh Aff. [Docket No. 28] Ex. C.  Additionally, Metcalf continued working at the MCC, and has offered no explanation as to how the MCC or the individual defendants still employed by MCC evaded his service of process.  The length of delay, coupled with the complete lack of excuse, warrants dismissal of Metcalf's claims.

---

[4]Metcalf's counsel has litigated many cases with multiple claims and many defendants. See e.g., Flores v. Opus Northwest Construction L.L.C., 11-cv-1987 (ADM/JJG) (8-count, 64-page complaint against 7 defendants); Hautala v. Thiel, 07-cv-1784 (JRT/FLN) (10-count complaint against 7 defendants); Russell v. Men's Wearhouse, Inc, 94-cv-832 (JRT/RLE) (complaint against 8 defendants).  Metcalf's counsel has also had a previous complaint dismissed as to certain defendants for failure to timely serve process.  Flores v. United States of America, 09-838 (ADM/SER) (dismissing without prejudice claims against 3 of 26 defendants for failure to timely serve process).

### 4. Whether the Movant Acted in Good Faith

Given the paucity of record, it is difficult to determine whether Metcalf acted in bad faith in failing to serve City Defendants prior to the expiration of the 120-day deadline. However, Metcalf's weak efforts to serve process after the 120 days evince blatant disregard, if not bad faith, toward Defendants. While Metcalf served the City of Minneapolis within days of the expiration of the 4(m) deadline, Metcalf failed to serve the remaining individual Defendants for over two months. See infra Section II. Additionally, Metcalf has offered no explanation for his failure to serve Defendant Kelber Catering. Id. If Metcalf's failure to serve was a result of his counsel's inadvertence or mistake, his continued failure to diligently serve all Defendants immediately upon discovery of his error indicates bad faith. See, e.g., Rollerblade, Inc. v. Rappelfeld, 165 F.R.D. 92, 95 n.1 (D. Minn. 1995) ("[T]he exercise of the Court's discretion to enlarge should be inversely related to the length of counsel's inattention after the expiration of the 120-day period prescribed by Rule 4(m) — that is, as the period of inattention expands, the potential for the exercise of discretion should decline.").

### 5. Potential Statute of Limitations Bar

Metcalf argues that because the statute of limitations would bar his re-filing of this suit, this Court should grant him a discretionary extension to serve process. It is true that "[r]elief may be justified, for example, if the applicable statute of limitations would bar the refiled action." Fed. R. Civ. P. 4, Advisory Committee Note to 1993 Amendments, subd. (m). However, it is also true that "the running of the statute of limitations does not require the district court to extend time for service of process." Kurka, 628 F.3d at 959 (quotation and citations omitted).

With the dismissal of Metcalf's case for failure to serve process, he will be barred by the

applicable statutes of limitation from re-filing his claims. However, in evaluating the totality of the circumstances and viewing the record as a whole, Metcalf lacked good cause and excusable neglect for his failure to serve Defendants in a timely manner, and no extension of the Rule 4(m) deadline is warranted. In a similar case, the Eighth Circuit affirmed dismissal where the failure to serve was initially the result of the clerk's error, where the plaintiff corrected service within five days of learning of her tardiness, where the defendants would be minimally prejudiced, and where the dismissal of the case would be dispositive because of the expiration of statutes of limitation. Kurka, 628 F.3d at 959. Similarly, the facts here persuade this Court that an extension is unwarranted.

### 6. Consequences of Attorney Fault

This Court is cognizant of the fact that Metcalf is bearing the consequences of his counsel's failures. An attorney is the client's agent, and as a result "the attorney's acts (or failures to act) within the scope of the representation are treated as those of his client." Holland v. Florida, 130 S. Ct. 2549, 2571 (2010) (citing Link v. Wabash R. Co., 370 U.S. 626, 633–34 and n.10 (1962)). Additionally, "keeping [a] suit alive merely because plaintiff should not be penalized for the omissions of his own attorney would be visiting the sins of plaintiff's lawyer upon the defendant." Link, 370 U.S. at 634 n.10. Here, the party who should bear the consequences of the failures of Metcalf's counsel should be Metcalf, not the many Defendants. Metcalf's claims are therefore dismissed without prejudice under Rule 12(b)(5) for failure to serve process.[5]

---

[5]City Defendants also urge alternative bases for partial dismissal of several of Metcalf's claims. Because the Complaint has already been dismissed under Rule 12(b)(5), these alternative grounds for dismissal are moot and are not decided.

### C.  Kelber Catering

Kelber Catering has still not been served with process in this case, and it is now 250 days from the filing of Metcalf's Complaint.  "A district court has the power to dismiss a case for failure to comply with its rules," Marshall v. Warwick, 155 F.3d 1027, 1030 (8th Cir. 1998), and Rule 4(m) is "an explicit textual recognition of that power under specified circumstances-when the plaintiff fails to comply with the 120-day period set forth therein.  Norsyn, Inc. v. R.M. Desai, 351 F.3d 825, 830 (8th Cir. 2003).  A court may sua sponte dismiss an action for ineffective service of process.  Simpson v. Pawlenty, No. Civ. 04-2912, 2004 WL 2757911, at *2 (D. Minn. Dec. 1, 2004) (citing Norsyn, 351 F.3d at 830).

Metcalf has been on actual notice since February 14, 2012, that no defendants had been timely served in this matter.  Sautter Aff. ¶¶ 6–8.  Moreover, nothing in the record evidences that Metcalf has served, or even attempted to serve, process on Kelber Catering.  As previously discussed, Metcalf's lack of good cause or excusable neglect for his service failures warrant the dismissal of his claims against the City Defendants, and for the same reason Metcalf's Complaint against Kelber Catering is dismissed sua sponte.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. City Defendants' Motion to Dismiss the Complaint [Docket No. 8] is **GRANTED**; and

2. Plaintiff John L. Metcalf's Complaint [Docket No. 1] is **DISMISSED** without prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


            s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  June 20, 2012.